EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio Autónomo de Carolina<br><br>Recurrido<br><br>v.<br><br>CH Properties<br><br>Peticionario | Certiorari<br><br>2018 TSPR 125<br><br>200 DPR ____ |

Número del Caso: CC-2017-704

Fecha: 29 de junio de 2018

Tribunal de Apelaciones:

      Región Judicial de Bayamón y Carolina

Abogados de la parte peticionaria:

      Lcdo. José A. Andreu Fuentes
      Lcdo. Pedro López Bergollo
      Lcdo. Pedro Rosario Urdaz

Abogados de la parte recurrida:

      Lcdo. Frank Torres Viada
      Lcda. Maritere De Jesús Aponte
      Lcda. Carmen Sonia Zayas

Derecho procesal civil: Aplicación del procedimiento de recusación de jueces en un pleito civil conforme a la Regla 63 de Procedimiento Civil y los Cánones de Ética Judicial. Deber de inhibición de un Juez que eleva los autos ante el Tribunal Supremo para evaluar la procedencia de una acción disciplinaria en contra de los representantes legales de una parte del caso que aun presidente y no ha culminado.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio Autónomo de Carolina

    Recurrido

        v.

CH Properties

    Peticionaria

CC-2017-0704    Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

(Regla 50)

San Juan, Puerto Rico, a 29 de junio de 2018.

Este caso nos presenta la oportunidad de contestar las siguientes interrogantes: ¿la recusación de un juez puede darse sin acreditar bajo qué escenario de la Regla 63.1 de Procedimiento Civil, *infra*, se configura?; ¿procede la inhibición de un juez cuando éste eleva los autos ante el Tribunal Supremo para evaluar la procedencia de una acción disciplinaria en contra de los representantes legales de una parte del caso que el mismo juez preside y aún no ha culminado?

Los asuntos que se presentan ante esta Curia solo requieren que detallemos algunos aspectos

procesales del caso, sin tener que entrar a considerar los hechos sustantivos del mismo. Veamos.

I

El Municipio de Carolina (Municipio) presentó una *Moción urgente [de] inhibición o recusación* en contra del Hon. Wilfredo Maldonado García (Juez Maldonado García), Juez Superior que atendía varias causas de acción presentadas por ambas partes en este caso.[1] En su moción, el Municipio alegó que el Juez Maldonado García había abusado de su poder judicial al adelantar su criterio y prejuzgar controversias medulares del caso. Añadió que lo anterior provocó la presentación de una querella ante la Oficina de Administración de los Tribunales (OAT).[2] De esta forma, el Municipio sostuvo que existía "base razonable para dudar de la imparcialidad del Juez Maldonado García por virtud del proceso disciplinario promovido por el Municipio. Ello, en unión a las posiciones, preferencias y rechazos anteriormente asumidos por [el Juez Maldonado García], sin importar la prueba recibida en sala e incluso antes que se someta prueba alguna".[3]

Luego de evaluar la *Moción urgente [de] inhibición o recusación*, el Juez Maldonado García determinó que no tenía motivo para inhibirse en el caso. A tales efectos, ordenó

---

[1] Véase *Moción urgente [de] inhibición o recusación*, Apéndice de la Petición de *certiorari*, págs. 265-270.

[2] **El 5 de febrero de 2018, la Oficina de Administración de Tribunales (OAT) archivó la querella sin más por no encontrar violación alguna a los Cánones de Ética Judicial por parte del Juez Maldonado García.**

[3] Íd., pág. 269.

la notificación de su Resolución a la Jueza Administradora Regional del Tribunal de Primera Instancia, quien, a su vez, refirió el asunto al Hon. Lizardo W. Mattei Román para su consideración. Evaluado el asunto, el Juez Mattei Román denegó la petición de inhibición presentada por el Municipio, tras concluir que "no se desprende razón o motivo que jurídicamente justifique la inhibición del Juez Maldonado García".[4] En consecuencia, el Juez Maldonado García continuó a cargo del caso.

Así las cosas, y tras una serie de trámites y disputas procesales, el Municipio presentó una segunda moción de inhibición o recusación[5] en contra del Juez Maldonado García.

En esta segunda moción de inhibición se hizo alusión a ciertas resoluciones emitidas por el Juez Maldonado García que, según concluyó el Municipio, exponían:

> [. . .] unas caracterizaciones sobre las representaciones e intenciones del ayuntamiento poco prudentes e impropias y peor aún, totalmente erróneas. Lo cual, unido a la radicación de la querella ética y los procedimientos atinentes a la presentación de la primera Moción de Inhibición o Recusación diluyen aquella interpretación vertida por el Juez Mattei Román en cuanto a que la radicación de una querella, por sí sola, no refleja conducta que aparente parcialidad alguna por parte de un juez.
>
> Pues, ahora no solo existe la querella, sino que las expresiones contenidas en [una de las resoluciones resueltas por el Juez Maldonado]

---

[4] *Resolución*, Apéndice de la *Petición de Certiorari*, págs. 294-301.

[5] Véase *Segunda moción de inhibición o recusación*, Apéndice de la Petición de *certiorari*, págs. 302-317.

en sí mismas reflejan el ánimo prevenido de
este Juez a favor de la parte demandada y en
prejuicio de la parte compareciente[...][6]

En respuesta a lo anterior, el Juez Maldonado García emitió una Resolución en la que concluyó que no tenía pasión, prejuicio ni parcialidad en la controversia ante su consideración, por lo que no se inhibiría del caso. En particular, expresó lo siguiente:

Volvemos y repetimos nuestra función ha sido y
será una estrictamente de naturaleza
adjudicativa en la cual jamás hemos faltado ni
a nuestros deberes ni responsabilidades mas no
vamos ni a continuar ni a tolerar el que se nos
continúe atacando por determinaciones tomadas
las cuales, según el propio expediente del caso
y a lo dispuesto por Tribunales de superior
jerarquía, todas se ajustan en derecho.[7]

Así, remitió la moción a la Jueza Administradora Regional para su disposición. Además, **el Juez Maldonado García le solicitó a la Jueza Administradora Regional que elevara los autos ante el Tribunal Supremo**, de manera tal que este Foro tomara conocimiento de la acción presentada en su contra y determinara sobre la procedencia de una acción disciplinaria. En respuesta, la Jueza Administradora Regional refirió el expediente del caso a la Jueza Coordinadora de Asuntos de lo Civil de la Región Judicial de Carolina (Jueza Coordinadora) para que atendiera la referida moción de inhibición. Sin embargo, la Jueza Coordinadora simplemente determinó reasignar el caso

---

[6] Véase Apéndice, pág. 304. Cabe señalar que las determinaciones que dieron lugar a la segunda querella fueron a su vez, objeto de otro recurso de *certiorari* ante el Tribunal de Apelaciones.

[7] *Resolución*, Apéndice de la *Petición de certiorari*, pág. 320.

al Hon. Ignacio E. Morales Gómez para que atendiera el mismo.[8] **En su Resolución, la Jueza Coordinadora no expuso fundamento alguno para la remoción del Juez Maldonado García, sino que señaló que la acción se tomaba "en el uso de nuestra discreción y fundamentados en las facultades y prerrogativas que la posición administrativa que ocupamos nos confiere".**[9] También dejó sin efecto el referido para que se elevaran los autos del caso al Tribunal Supremo, tras concluir que el asunto era académico.[10]

En desacuerdo con la determinación del Tribunal de Primera Instancia, CH Properties, Inc., acudió ante el Tribunal de Apelaciones y solicitó la revocación de la *Resolución y Orden* emitida por la Jueza Coordinadora. Sin embargo, y mediante la Sentencia de la cual se recurre, el Tribunal de Apelaciones confirmó la determinación del foro de instancia en cuanto a la recusación del Juez Maldonado García. En resumen, el Tribunal de Apelaciones razonó que a pesar de que las dos solicitudes de inhibición no eran suficientes para recusar al Juez Maldonado García, **el tono de las expresiones del magistrado aludiendo a que no está parcializado, la elevación de los autos ante este Foro para consideraciones disciplinarias y la querella ante la OAT "macula la pureza de los procesos y su imparcialidad, al**

---

[8] El Hon. Ignacio E. Morales Gómez se inhibió *motu proprio* de presidir el caso.

[9] Véase *Resolución y Orden*, Apéndice de la Petición de *certiorari*, págs. 322-323.

[10] Íd.

**menos en su apariencia**".(Énfasis suplido).[11] No obstante, revocó y dejó sin efecto la denegatoria de elevar los autos para la consideración de una acción disciplinaria, ello tras concluir que le corresponde a esta Curia pasar juicio sobre los asuntos éticos y que, además, el Juez Maldonado García tenía la potestad de elevar los autos.

Inconforme, CH Properties acude ante este Tribunal mediante un recurso de *certiorari* y como único señalamiento de error expuso lo siguiente:

> Erró el Honorable Tribunal de Apelaciones al confirmar la recusación del Honorable Juez Wilfredo Maldonado García.

Procedemos a expedir el recurso y disponer de las controversias al amparo de la Regla 50 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Pasemos, pues a exponer el marco jurídico para resolver el asunto presentado ante nuestra consideración.

**II**

A. La inhibición y recusación de jueces

La inhibición y recusación de jueces está regulada por los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, y las Reglas 63.1 y 63.2 de Procedimiento Civil, 32 LPRA Ap. V.

En específico, la Regla 63.1 de Procedimiento Civil, *supra*, establece varios escenarios o causas en que los jueces se ven obligados a inhibirse *motu proprio* o a recusación de parte, a saber:

---

[11] *Sentencia*, Apéndice de la Petición de *certiorari*, pág. 339.

(a) por tener prejuicio o parcialidad hacia cualquiera de las personas o los abogados o abogadas que intervengan en el pleito, o por haber prejuzgado el caso;

(b) por tener interés personal o económico en el resultado del caso;

(c) por existir un parentesco de consanguinidad o afinidad dentro del cuarto grado con el (la) fiscal, procurador o procuradora de asuntos de familia, defensor(a) judicial, procurador(a) de menores o cualquiera de las partes o sus representantes legales en un procedimiento civil;

(d) por existir una relación de amistad de tal naturaleza entre el juez o jueza y cualquiera de las partes, sus abogados o abogadas, testigos u otra persona involucrada en el pleito que pueda frustrar los fines de la justicia;

(e) por haber sido abogado(a), o asesor(a) de cualquiera de las partes o de sus abogados(as) en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración;

(f) por haber presidido el juicio del mismo caso en un tribunal inferior o por haber actuado como magistrado(a) a los fines de expedir una orden de arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal;

(g) por intervenir en el procedimiento una persona natural o jurídica que le haya facilitado o gestionado algún préstamo en el que no se hayan dispensado las garantías o condiciones usuales;

(h) cuando en calidad de funcionario(a) que desempeña un empleo público, haya participado como abogado(a), asesor(a), o testigo esencial del caso en controversia;

(i) cuando uno de los abogados(as) de las partes sea abogado(a) de los jueces o juezas que han de resolver la controversia ante su consideración o lo haya sido durante los últimos tres años, o

(j) **por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.** (Énfasis suplido).

Por otro lado, mientras la Regla 63.1 de Procedimiento Civil, *supra*, establece las causas o escenarios en los que un juez deberá inhibirse o ser recusado, la Regla 63.2 de Procedimiento Civil, *supra*, dispone sobre el perfeccionamiento de la solicitud de inhibición o recusación y el procedimiento. La regla señala lo siguiente:

> a) Toda solicitud de recusación será jurada y se presentará ante el juez o jueza recusado(a) dentro de veinte (20) días desde que la parte solicitante conozca de la causa de la recusación. La solicitud incluirá los hechos específicos en los cuales se fundamenta y la prueba documental y declaraciones juradas en apoyo a la solicitud. Cuando la parte promovente de la recusación no cumpla con las formalidades antes señaladas, el juez o jueza podrá continuar con los procedimientos del caso.

> (b) Una vez presentada la solicitud de recusación, si el juez o jueza recusado(a) concluye que procede su inhibición, hará constar mediante resolución escrita los incisos (a) a (i) de la Regla 63.1 de este apéndice aplicable, en su defecto, la razón específica para su inhibición bajo el inciso (j) y la notificará a todas las partes. El caso será asignado a otro juez o jueza.

> (c) Si el juez o la jueza concluye que no procede su inhibición, se abstendrá de continuar actuando en su capacidad de juez o jueza en el caso y remitirá los autos de éste al juez administrador o jueza administradora para la designación de un juez o jueza que resuelva la solicitud de recusación. La recusación se resolverá dentro del término de treinta (30) días de quedar sometida.

> (d) Una vez un juez o jueza haya comenzado a intervenir en un caso, no podrán unirse al caso los abogados o abogadas cuya intervención pueda producir su recusación.

Con anterioridad a la aprobación de la Regla 63.2 de Procedimiento Civil, *supra*, la Regla 63.1 de Procedimiento Civil de 1979 disponía lo siguiente:

> Cualquier recusación deberá ser jurada y expondrá los hechos en que se funda. Dicha recusación deberá ser presentada tan pronto el solicitante advenga en conocimiento de la causa de recusación.[12]

Nótese que la referida disposición solamente exponía el contenido de la moción de recusación, pero no establecía el procedimiento. Por ello, los cambios establecidos en la actual Regla 63.2 de Procedimiento Civil, *supra*, van dirigidos a especificar el procedimiento a seguir.

Conforme a lo anterior, vemos que la inhibición de un juez puede producirse bajo dos escenarios: a iniciativa del juez (*motu proprio*) o por solicitud de recusación de una parte. Si la inhibición surge *motu proprio*, el juez se abstendrá de intervenir tan pronto conozca la causa y, además, emitirá una resolución escrita y fundamentada. Si se trata de que una parte solicitará la recusación del juez y éste determinara que en efecto procede su inhibición, entonces lo hará constar a través de una resolución en la cual especificará el inciso de la Regla 63.1 de Procedimiento Civil, *supra*, que motiva su abstención. No obstante, si se alude a la Regla 63.1(j) de Procedimiento Civil, *supra* (cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que

---

[12] Regla 63.2 de Procedimiento Civil de 1979, 32 LPRA. Ap. III (derogada).

tienda a minar la confianza pública en el sistema de justicia) entonces deberá detallar las circunstancias específicas.[13]

Por otro lado, en caso de que una parte solicite la inhibición al juez y éste rehúse inhibirse, entonces el asunto deberá referirse al Juez Administrador para que éste asigne otro juez, quien tendrá la encomienda de determinar si procede o no la recusación del juez en cuestión. El juez a quien se le asigne la evaluación de tal solicitud de recusación deberá, a los 30 días de habérsele asignado el asunto, emitir su determinación por escrito y fundamentada en cualquiera de los escenarios dispuestos por la Regla 63.1 de Procedimiento Civil, *supra*. Distinto a la circunstancia en que el juez que está viendo el caso se inhibe, la Regla 63.2 de Procedimiento Civil, *supra*, no establece expresamente la obligación del juez a quien se le asigna la evaluación de una solicitud de recusación de emitir su determinación por escrito y fundamentada en al menos una de las causas que establece la Regla 63.1 de Procedimiento Civil, *supra*. Sin embargo, consideraciones de debido proceso de ley -en su contexto apelativo- y de simple sentido común así lo requieren.

B. Los Cánones 8 y 20 (j) de Ética Judicial

Como vimos, el último escenario de la Regla 63.1 de Procedimiento Civil, *supra*, el inciso (j), provee una

---

[13] R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico: derecho procesal civil</u>, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 324.

cláusula residual a través de la cual se amplían las causas de inhibición y recusación. Esta cláusula es de carácter remedial, por lo que debe interpretarse liberalmente,[14] y constituye una causa de inhibición fundamentada en la apariencia de imparcialidad, que armoniza con los Cánones 8 y 20(j) de Ética Judicial, 4 LPRA Ap. IV-B.

El Canon 8 de Ética Judicial, *supra*, en lo pertinente establece que "[l]a conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias[…]". Asimismo, el Canon 20(j) de Ética Judicial, *supra*, establece que los jueces deberán inhibirse "por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia".

En cuanto al significado de prejuicio o parcialidad personal, este Tribunal ha precisado que se refiere a una actitud que se origina fuera del plano judicial, es decir, en el plano extrajudicial.[15] Así, al determinar si existe o no prejuicio personal de parte del juez, debemos analizar la totalidad de las circunstancias a la luz de la prueba presentada.[16] "Para ello, es necesario que utilicemos la norma objetiva para todos: la del buen padre de familia; mirando no desde la perspectiva del Juez o de los

---

[14] J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. V, pág. 1851.

[15] Pueblo v. Maldonado Dipiní, 96 DPR 897, 910 (1969).

[16] Ruiz v. Pepsico PR, Inc., 148 DPR 586, 589 (1999).

litigantes, sino desde la óptica de este mítico ser".[17] Nos menciona el tratadista Cuevas Segarra que "el estándar ético es objetivo: si una persona razonable, con conocimiento de todas las circunstancias, tendría dudas sobre la imparcialidad del juez".[18] Esta Curia ha manifestado que "[l]a imputación de parcialidad o prejuicio, como punta de lanza, debe cimentarse en cuestiones personales serias, no triviales ni judiciales; es decir, una actitud originada extrajudicialmente en situaciones que revistan sustancialidad".[19]

Vemos que la exigencia de apariencia de imparcialidad es una norma firmemente enraizada en importantes principios éticos.[20] Con respecto a ello, este Tribunal ha expresado que para que proceda la inhibición o recusación de un juez no es imprescindible probar la existencia de prejuicio o parcialidad de hecho, basta con que exista la apariencia de prejuicio o parcialidad.[21] Es decir, **"la mera apariencia de parcialidad constituye motivo suficiente para la inhibición o recusación de un juez"**.(Énfasis suplido).[22] Ello, pues "la fe de la ciudadanía en el sistema de justicia que impera en nuestro País resulta ser imprescindible para su bienestar

---

[17] Cuevas Segarra, op. cit., pág. 1852.

[18] Íd., pág. 1835.

[19] Ruiz v. Pepsico PR, Inc., supra, pág. 588.

[20] Lind v. Cruz, 160 DPR 485, 490 (2003).

[21] Pueblo v. Martes Olán, 103 DPR 351, 355 (1975).

[22] Lind v. Cruz, supra, pág.. 494 (2003).

general".[23] Consecuentemente, "no basta con que el juez sea imparcial y objetivo; es preciso que lo parezca".(Énfasis omitido).[24]

Es sabido que "el Estado de Derecho se asienta sobre el recto y sabio ejercicio de las funciones judiciales. La singularidad de esta función configura la imparcialidad del juzgador como exigencia del debido proceso de ley".[25] De esta forma, no solamente se requiere que los jueces sean imparciales, sino que su conducta excluya la apariencia de imparcialidad.[26]

Los jueces están llamados a ejemplificar la independencia judicial. De esta manera, las personas en igualdad de condiciones tendrán derecho a ser oídas públicamente y con justicia por un tribunal independiente e imparcial.[27] Los tribunales de justicia deben velar porque la balanza en que se pesan los derechos de todos los ciudadanos esté libre de sospechas, aunque las mismas sean infundadas.[28]

---

[23] Íd., pág. 488.

[24] Íd.

[25] Martí Soler v. Gallardo Álvarez, 170 DPR 1, 7-8 (2007).

[26] Lind v. Cruz, supra, pág. 490.

[27] Canon 2 de Ética Judicial, 4 LPRA Ap. IV-B; In re Mercado Santaella, 197 DPR 1032, 1059, (2017).

[28] In re Mercado Santaella, supra, pág. 1064, citando a Sucn. Ortiz Campoamor Redín, 125 DPR 106, 190 (1990).

C. El Canon 7 de Ética Judicial y el Canon 9 de Ética Profesional

Por otro lado, el Canon 7 de Ética Judicial, 4 LPRA Ap. IV-B, establece como un deber que "cuando los hechos les consten personalmente, las juezas y los jueces promoverán y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaria, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes". Así, tanto los abogados, como los jueces tienen el deber de velar porque no se empañe la imagen de imparcialidad de la Judicatura.[29]

Por otro lado, y conforme con el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, la buena marcha del proceso judicial es parte de la responsabilidad ineludible de todo miembro de la profesión legal. Por ello, "el deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa".[30]

D. La administración de los Centros Judiciales

La administración de los Centros Judiciales está compuesta principalmente por un Juez Administrador, un Juez

---

[29] In re Lugo Rodríguez II, 155 DPR 123, 134 (2001).

[30] Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX.

Subadministrador, un Director Administrativo y Jueces Coordinadores.[31]

El Juez Administrador tiene a cargo la supervisión y el buen funcionamiento del Centro Judicial de la Región asignada. Nótese que "[l]a función del Juez Administrador es **de carácter administrativo.**" (Énfasis suplido).[32] Para cumplir con esa encomienda contará con la ayuda del Juez Subadministrador y del Director Administrativo.[33]

Con relación al Juez Coordinador, las Reglas para la Administración del Tribunal de Primera Instancia disponen lo siguiente:

> (A) Los Jueces Administradores o las Juezas Administradoras de las regiones judiciales nombrarán, de entre los jueces y las juezas de cada centro judicial, los Jueces Coordinadores o las Juezas Coordinadoras de Asuntos Judiciales —civiles, criminales, relaciones de familia y de asuntos de menores— o de aquellas áreas que sean necesarias para asistir **en la administración** de dicha subunidad administrativa. Éstos y éstas le serán responsables al Juez Administrador o a la Jueza Administradora de la Región Judicial del buen funcionamiento del centro judicial en lo concerniente a su particular esfera de actividad.
>
> (B) Los Jueces Coordinadores o las Juezas Coordinadoras no ejercerán ningún tipo de función administrativa que pueda interferir con las funciones asignadas a los Jueces Administradores y a las Juezas Administradoras de las regiones judiciales, y deberán coordinar con éstos o éstas con respecto a cualquier

---

[31] Véanse *Reglas para la Administración del Tribunal de Primera Instancia*, según enmendadas, 4 LPRA Ap.II-B.

[32] Hernández Colón, op. cit., pág. 88.

[33] Íd.

asunto que pueda afectar el funcionamiento de las salas. (Énfasis suplido).[34]

## III

Del expediente de este caso surge que cuando el Juez Maldonado García fue recusado no se hizo constar la causa que justificó su recusación. Es decir, no se desprende alguno de los escenarios que dan paso a la recusación, según establecidos en la Regla 63.1 de Procedimiento Civil, *supra*, y el Canon 20 de Ética Judicial, *supra*. **En este contexto, es preciso aclarar que cuando un juez concluye que no procede su inhibición y se activa el proceso establecido por la Regla 63.2 de Procedimiento Civil, *supra*, para que el juez designado pase juicio sobre la procedencia de la recusación, éste último tiene la obligación de hacer constar en qué causa de las dispuestas en la Regla 63.1, de Procedimiento Civil, *supra*, fundamenta su determinación.** En otras palabras, nuestro sistema no permite que ante una solicitud de recusación un juez que está presidiendo un caso sea removido del mismo sin que se establezca el fundamento según la mencionada Regla 63.1 para tal remoción y que el fundamento sea claramente establecido en una resolución. De lo contrario, la parte que no ha solicitado la inhibición del juez queda imposibilitada de señalar los fundamentos específicos por los cuales entiende que el foro de instancia erró al recusar al juez que presidía el caso y, consecuentemente,

---

[34] Véase *Reglas para la Administración del Tribunal de Primera Instancia*, según enmendadas, 4 LPRA Ap. II-B.

su derecho a revisión se ve afectado. Además, obstaculiza la función revisora del Tribunal de Apelaciones.

De particular preocupación es el hecho de que la recusación en este caso se fundamentó únicamente en que la Jueza Coordinadora presuntamente tenía tales facultades y prerrogativas. Por eso es preciso aclarar que tales facultades o prerrogativas en realidad no le asisten al Juez Coordinador. Recordemos que este puesto es estrictamente administrativo. Lo que significa que el mismo **no** confiere ni a al juez coordinador ni a los jueces designados para actuar en la administración de un Centro Judicial, el poder para, fundamentado en la sola discreción que el puesto que ocupan le confiere, ordenar la recusación de un compañero juez o jueza **que se encuentre presidiendo un proceso judicial**. Esto es, una vez referida una solicitud de recusación, un Juez Coordinador no puede dejar de atenderla y reasignar el caso sin más. La adjudicación de una solicitud de recusación tiene que basarse en las causales que se enumeran en la Regla 63.1 de Procedimiento Civil, *supra*. Ciertamente, no podemos avalar una acción en contrario que, además de no encontrar apoyo en la Regla 63.1, de Procedimiento Civil, *supra*, trastoca, a lo menos en apariencia, la pureza y transparencia del procedimiento.

Es menester tener presente que remover a un juez en contra de su voluntad de un caso que ya ha iniciado es un asunto muy serio que requiere que la acción se fundamente en hechos claros y determinaciones fundamentadas en

derecho. De esta forma se le permite a todas las partes entender, en lo que sea posible, a qué se ha debido la acción. Al no realizarse el proceso correcto, se pueden crear dudas que empañen y resten legitimidad a nuestro sistema de justicia.

Ahora bien, en este caso el Tribunal de Apelaciones confirmó la recusación del Juez Maldonado García fundamentado en que la querella incoada en contra del magistrado, el tono de las expresiones emitidas por éste en la Resolución aludida y el acto de elevar los autos ante este Foro (para evaluar la procedencia de una acción disciplinaria) podrían generar una apariencia de imparcialidad. Razonó que **a pesar de que todos estos incidentes no justifican de forma aislada la inhibición del Juez Maldonado García, ambas querellas toman ahora la apariencia de una especie de disputa ética entre el Juez Maldonado García y los abogados.**

En primer lugar, y en cuanto al "tono de las expresiones" del Juez Maldonado García aludiendo a que no estaba parcializado, concluimos que las mismas no fueron unas irrespetuosas o destempladas que proyectaran, de por sí, una falta de temperamento judicial o animosidad contra alguna de las partes o sus abogados. Simplemente el Juez Maldonado García articuló una expresión firme ante lo que él entendía que eran unas expresiones de tono ofensivo de los abogados del Municipio y que atentaban contra su función como juez en el caso. Ciertamente, y como concluyó

el tribunal apelativo intermedio, las expresiones del Juez Maldonado García al rehusar inhibirse, por sí solas, no podían provocar su recusación.

En cuanto a la querella presentada en contra del Juez Maldonado García como fundamento para su recusación, nótese que los incisos (a) a (i) de la Regla 63.1 de Procedimiento Civil, *supra*, no contemplan este escenario como motivo automático de inhibición o recusación. Con relación al inciso (j) de la misma Regla 63.1, *supra*, y los Cánones 8 y 20 (j) de Ética Judicial, *supra*, al evaluar estas disposiciones en armonía con la Regla 63(d), de Procedimiento Civil, *supra*, tenemos que llegar a la conclusión de que estas disposiciones no se refieren a alguna acción presentada o llevada a cabo por cualquiera de las partes en el caso que está ante la consideración del juez.

De hecho, es claro que permitir que la mera presentación de una querella contra un juez que preside un caso sea suficiente para provocar su inhibición, abriría la puerta para que se presentaran este tipo de querellas con el único propósito de lograr la recusación automática de los jueces, cuando así alguna parte lo entienda conveniente. Como bien señala el tratadista Cuevas Segarra, no podemos permitir que la regla 63.1(j) de Procedimiento Civil, *supra*, se utilice como subterfugio.[35] Concluimos, entonces, que ni las expresiones del Juez Maldonado García

---

[35] Cuevas Segarra, op. cit., pág. 1832.

ni la querella presentada en su contra, consideradas aún de manera conjunta, constituían razón para ordenar su recusación.

Corresponde entonces que consideremos el hecho de que el Juez Maldonado García, a la vez que decidió no inhibirse del caso, elevó los autos ante este Foro para la consideración de una medida disciplinaria en contra de los abogados del Municipio. Nótese que el resultado de permitir tal acción hubiera sido que mientras el Juez Maldonado García presidía el caso, los representantes legales del Municipio (que son abogados en el caso) serían objeto de un proceso de acción disciplinaria ante esta Curia iniciado por el juez, proceso en el cual existe la posibilidad de que el propio juez fuera parte querellante en contra de esos abogados. En ese contexto, aunque estipuláramos que el Juez Maldonado García no estuviera parcializado o prejuiciado, es forzoso concluir que, bajo el tracto procesal antes descrito y el lenguaje categórico utilizado por éste al momento de rehusar inhibirse, la acción de elevar los autos mientras el caso aún está pendiente no supera la exigencia de apariencia de imparcialidad que específicamente exige el Canon 20(j) de Ética Judicial, *supra*. Por el contrario, ante los ojos de una persona razonable, pone en tela de juicio la imparcialidad en la adjudicación del caso, situación que, como vimos, es lo que precisamente pretende evitar la Regla 63.1(j) de Procedimiento Civil, *supra*. En ocasiones ocurren eventos

que, aun cuando no necesariamente inciden sobre el criterio del juez, podrían dejar una impresión de apariencia de parcialidad.

Por otro lado, los foros de instancia cuentan con el poder inherente de tomar medidas dirigidas a supervisar y controlar la conducta de los abogados y las partes durante los procesos judiciales.[36] Así, para mantener el mejor orden y control de los procesos o incluso para salvaguardar el honor y la dignidad del tribunal, el juez que preside el mismo puede utilizar mecanismos como la amonestación e incluso la imposición de sanciones, cuando lo entienda necesario. Lo que no debe hacer un juez en circunstancias similares a las de este caso, es elevar los autos mientras se mantiene presidiendo el mismo.

**IV**

Por todo lo anterior, expedimos el auto de *certiorari* sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, *supra*, y confirmamos por otros fundamentos la Sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[36] Meléndez Vega v. Caribbean Intern. News, 151 DPR 649, 660-661 (2000).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Municipio Autónomo de Carolina

    Recurrido

      v.

CH Properties

    Peticionaria

CC-2017-0704    Certiorari


SENTENCIA


En San Juan, Puerto Rico, a 29 de junio de 2018.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, expedimos el auto de *certiorari* sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, y confirmamos por otros fundamentos la Sentencia emitida por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emite un Voto de Conformidad. El Juez Asociado señor Colón Pérez concurre con el resultado y hace constar la siguiente expresión:

> "El Juez Asociado señor Colón Pérez <u>concurre</u> con lo resuelto por este Tribunal en el día de hoy, a saber: establecer que cuando un juez o jueza del Tribunal de Primera Instancia concluye que no procede su inhibición en cierto proceso judicial en curso, y que preside, y se activa el proceso de recusación establecido en la Regla 63.2 de las de

Procedimiento Civil, 31 LPRA Ap. V, R.63.2, el juez designado para pasar juicio sobre la procedencia o no de dicha recusación -- incluyendo al Juez(a) Coordinador(a) --, tendrá la obligación de hacer constar en cuál de las causas de las dispuestas en la Regla 63.1 de Procedimiento Civil, 31 LPRA Ap. V, R. 63.1, fundamenta su determinación. Concurre por entender que, para llegar al <u>único</u> resultado que hoy se llega, bastaba con que este Foro se limitara a realizar un estudio de lo dispuesto en las reglas procesales antes mencionadas, entiéndase las Reglas 63.1 y 63.2 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa, sin más."

La Jueza Presidenta Oronoz Rodríguez se une a la expresión del Juez Asociado señor Colón Pérez. El Juez Asociado señor Feliberti Cintrón no interviene.


                        Juan Ernesto Dávila Rivera
                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Municipio Autónomo de Carolina | | *Certiorari* |
|---|---|---|
| Recurrido | | |
| v. | CC-2017-704 | |
| CH Properties | | |
| Peticionaria | | |

Voto de Conformidad emitido por la Jueza Asociada Señora Pabón Charneco.

En San Juan, Puerto Rico, a 29 de junio de 2018.

Estoy conforme con la Opinión que antecede. Sin embargo, debo expresarme respecto al trámite procesal que culminó en la recusación del Juez Superior, Hon. Wilfredo Maldonado García (Juez Maldonado García). No puedo ignorar la gestión obstinada del Municipio de Carolina (Municipio) y de su representación legal, cuya sola misión desde principios del año 2016 fue lograr la inhibición del Juez Maldonado García en el caso *CH Properties* v. *Municipio de Carolina,* Núm. Civil FCD2013-0838 pendiente ante el Tribunal de Primera Instancia, Sala de Carolina. Veamos.

I

**El 18 de marzo de 2016,** el Municipio presentó una Demanda de *Auto Inhibitorio* contra el Juez Maldonado García. Allí, nos solicitó que le ordenáramos abstenerse de proseguir con los procedimientos del caso de autos porque

el foro primario carecía de jurisdicción *in personam* y sobre la materia. Tras evaluar detenidamente el recurso extraordinario, **el 31 de marzo de 2016** lo denegamos.

**El 29 de agosto de 2016**, el Alcalde del Municipio presentó una Querella contra el Juez Maldonado García ante la Oficina de Administración de los Tribunales (OAT). *Inter alia*, arguyó que el Juez Maldonado García: (1) abusó de su poder judicial y violó el Canon 13 de Ética Judicial al citarlo so pena de desacato; (2) adelantó su criterio sin escuchar prueba y denotó un ánimo prevenido en favor de CH Properties, en violación al Canon 9 de Ética Judicial y (3) exhibió un comportamiento errático e irrespetuoso respecto al Municipio, en contravención al Canon 14 de Ética Judicial. Solicitó, como medida cautelar, que lo recusaran "para preservar la integridad del proceso judicial" ya que su conducta presuntamente arrojaba "serias dudas sobre la transparencia y pureza de los procedimientos", así como una "irreparable apariencia de imparcialidad". Esta Querella fue archivada porque del expediente judicial no surgía prueba indicativa de violación ética alguna.

*Ad interim*, **el 5 de octubre de 2016**, el Municipio presentó una *Moción Urgente Inhibición o Recusación*. Arguyó que la Querella interpuesta por el Alcalde del Municipio contra el Juez Maldonado García maculaba la imparcialidad del juzgador y era **razón suficiente para creer** que este actuaría con pasión y prejuicio respecto al Municipio. Sostuvo que la presentación de la Querella *per se* requería

la inhibición o recusación del juez querellado. El Juez Maldonado García determinó que no tenía motivo para inhibirse y refirió el asunto a la Jueza Administradora Regional quien, a su vez, lo refirió al Hon. Lizardo W. Mattei Román (Juez Mattei Román). **El 12 de diciembre de 2016,** el Juez Mattei Román emitió una Resolución en la que concluyó que no existía fundamento legal que requiriera la inhibición del Juez Maldonado García y que tanto la *Querella* como la *Moción de Inhibición o Recusación* eran subterfugios del Municipio para no cumplir con una Sentencia dictada por transacción judicial.

**El 31 de mayo de 2017,** el Municipio presentó una *Segunda Moción de Inhibición o Recusación*. Arguyó que el Juez Maldonado García realizó caracterizaciones impropias e imprudentes respecto al Municipio en unas Resoluciones. Sostuvo que si bien una Querella no es suficiente *per se* para requerir la inhibición del juez, el lenguaje de las Resoluciones reflejaba el ánimo prevenido del Juez. Indicó que "ya no se trata[ba] de una mera creencia de ausencia de imparcialidad", sino que ahora el Juez Maldonado García, en efecto, utilizaba el poder judicial para actuar apasionada y prejuiciadamente contra el Municipio. Nuevamente, el Juez Maldonado García determinó que no se inhibiría del caso pues su función había sido estrictamente adjudicativa y jamás había actuado con pasión, prejuicio ni parcialidad. Así las cosas, refirió el asunto a la Jueza Administradora Regional y le solicitó que elevara los autos ante nos, con el

propósito de que determináramos si procedía una acción disciplinaria contra los abogados del Municipio por los continuos ataques contra su integridad.

Tras varios trámites procesales, la controversia llegó ante nos y motivó la Opinión que antecede.

## II

La conducta desplegada por el Municipio y su representación legal denota, como poco, un claro abuso del sistema judicial. Desde el inicio, utilizaron planteamientos jurisdiccionales, procesales y ético-disciplinarios con un solo propósito: recusar al Juez Maldonado García. Estos planteamientos fueron rechazados una y otra vez por ser infundados y carecer de apoyo en el expediente judicial.

Primero, nos solicitaron que le ordenáramos abstenerse de proseguir con los procedimientos del caso utilizando como pretexto planteamientos jurisdiccionales desprovistos de base y fundamento legal en el expediente. Denegamos el recurso. Segundo, presentaron una Querella ante la OAT en la que le imputaron la violación de varios Cánones de Ética Judicial. Tercero, poco tiempo después, le solicitaron que se inhibiera porque la Querella presentada en su contra constituía razón suficiente para creer que este actuaría apasionada y prejuiciadamente contra el Municipio. **Por último, y a pesar de que: (1) la Querella fue archivada por no encontrarse violación alguna a los Cánones de Ética Judicial y (2) la *Moción de Inhibición o Recusación* fue**

**denegada, le solicitaron nuevamente la inhibición con fundamentos similares a los previamente rechazados.**

Coincido con la apreciación del Juez Mattei Román y la Jueza María Gómez Córdova respecto a que los múltiples intentos de recusar al Juez Maldonado García formaron parte de un patrón de tácticas dilatorias con miras a eludir el cumplimiento de una Sentencia final, firme e inapelable.

Aunque ciertamente el Juez pudo haberse limitado a continuar el proceso establecido en la Regla 63.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, o utilizar otros mecanismos al evaluar la Segunda Moción de Inhibición, en todo su derecho optó por elevar los autos para que evaluáramos si procedía iniciar un proceso disciplinario contra los abogados del Municipio. Lamentablemente, ello lo convierte en parte promovente de la acción disciplinaria y, por ende, crea una apariencia de parcialidad. Irónicamente, el Juez Maldonado García fue quien le confirió al Municipio y a sus abogados el fundamento legal que estos carecían para justificar su inhibición en el caso de autos. Si bien la actuación del Juez Maldonado García nos obliga a confirmar su recusación, no cabe duda de que ello atentará contra la solución justa, rápida y económica del caso.


                        Mildred G. Pabón Charneco
                        Jueza Asociada